UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 15-00036-01 |
| VERSUS | JUDGE ROBERT G. JAMES |
| BILLY J. ADCOX, JR. | MAG.  JUDGE KAREN L. HAYES |

RULING

Pending before the Court is Defendant Billy J. Adcox, Jr.'s ("Adcox") Motion to Stay [Doc. No. 37]. The Government has filed a response memorandum. [Doc. No. 39]. For the following reasons, Adcox's motion is GRANTED IN PART and DENIED IN PART.

THE ALLEGATIONS CONTAINED IN THE INDICTMENT

Adcox is charged in a two-count Indictment with conspiracy to commit securities fraud (insider trading) in violation of 18 U.S.C. § 371 (Count 1) and securities fraud (insider trading) in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 U.S.C. §§ 240.10b5 and 240.10b5-1.

The Indictment alleges that Adcox, who had a brokerage account, obtained information from his close friend, Jesse H. Roberts, III ("Roberts"), an experienced trader in stocks and stock options, about The Shaw Group, Inc. ("Shaw"). Shaw, a Baton Rouge firm listed on the New York Stock Exchange ("NYSE"), provided engineering, construction, technology, fabrication, remediation, and support services for clients in the energy, chemicals, environmental, infrastructure and emergency response industries. Roberts' brother-in-law, Scott David Zeringue ("Zeringue"), was the Vice President of Construction Operations for the Plant Services Division of Shaw. Zeringue obtained information about a merger between Shaw and Chicago Bridge and Iron Company N.V. ("CB&I"), an engineering and construction company in the energy industry with headquarters in the Greater

Houston metropolitan area, which was also listed on the NYSE. Before the public announcement of the merger, Zeringue gave non-public information regarding the impending acquisition of Shaw by CB&I," the so-called "Inside Information." [Doc. No. 1, ¶ 8]. Although "Zeringue owed a fiduciary duty to Shaw to refrain from using Inside Information for his personal benefit," he disclosed the Inside Information to Roberts for use in trading Shaw securities, telling Roberts that the information was confidential. Roberts, in turn, disclosed the Inside Information to Adcox, advising Adcox to buy Shaw securities. When Adcox questioned Roberts about the source of the Inside Information, Roberts told him that "the information was provided by Zeringue." *Id.* at ¶ 11. Adcox knew Zeringue, that he worked for Shaw, and that he "would be in a position to know about an acquisition of Shaw." *Id.* Adcox also knew that Roberts was buying Shaw securities on the basis of the Inside Information.

Adcox then disclosed the Inside Information to "John Doe," told him who the information had come from, and put him in touch with Roberts to discuss the information. The alleged co-conspirators all "knew that, once the trading public became aware of the impending acquisition of Shaw, the price of Shaw stock would almost certainly rise." *Id.* at ¶ 13. From in and around July 2012 through in or around December 2012, Adcox and his co-conspirators allegedly "engaged in a scheme to profit from the Inside Information by buying Shaw securities before the merger agreement became public and then selling the securities after the public announcement of the merger agreement caused the Shaw stock price to rise, all at the expense of Shaw shareholders and potential Shaw shareholders who were not privy to the Inside Information." *Id.* at ¶ 14.

After the merger, Adcox "exercised his Shaw call options and later sold his Shaw stock for a profit of more than $37,000." *Id.* at ¶ 17e.

## LAW AND ANALYSIS

Adcox moves to stay the case against him until the Supreme Court issues a decision in *Salman*

*v. United States*, No. 15-628, 2016 WL 207256 *1 (Jan. 19, 2016). In that case, the Supreme Court granted the petitioners writ of certiorari as to the first question presented in the Petition:

> Does the personal benefit to the insider that is necessary to establish insider trading under *Dirks v. SEC*, 463 U.S. 646 (1983), require proof of "an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature," as the Second Circuit held in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), *cert. denied*, No. 15-137 (U.S. Oct. 5, 2015), or is it enough that the insider and the tippee shared a close family relationship, as the Ninth Circuit held in this case?

*Salman v. United States*, No. 15-628, 2015 WL 7180648 *1 (Nov. 10, 2015). Adcox contends the question before the Supreme Court is at the "heart of Adcox's criminal liability," and directly impacts his pending Motion to Dismiss (Doc. No. 20), and how this Court will instruct the jury when this matter goes to trial. Adcox argues that fairness and judicial economy support the stay, so that he is not forced to expend resources in his defense and the Court should not expend its resources and time addressing motions, additional discovery matters, and potential jury instructions when the Supreme Court's decision could eliminate the need for a trial.

The Government agrees that the trial in this matter should be stayed pending the Supreme Court's decision in *Salman* because that decision could affect the jury instructions in this case. However, the Government contends that the stay should be denied as to the pending motions to suppress and to dismiss and as to discovery. The Government argues that the motions are already briefed, that a delay causes harm to the Government to the extent that witnesses are forced to testify about dated events, and that the delay is based only on the chance that there is a benefit if the Supreme Court's ruling is favorable to Adcox's position.

As the Government points out, in determining whether to grant a stay, the Court considers the following factors: "1) hardship and inequity on the moving party without a stay; 2) prejudice the non-moving party will suffer if a stay is granted; and 3) judicial economy." *Morris v. Wyeth*, 2011 WL

311009, at *2 (W.D. La Jan. 27, 2011) (citing *Falgoust v. Microsoft Corp.*, 2000 WL 462919 (E.D. La Apr. 19, 2000)).

After having fully considered the arguments of counsel and the record in this matter, the Court finds that a partial stay is appropriate in this case. Given the question before the Supreme Court, the Court finds that both the trial date and a ruling on the pending Motion to Dismiss should be stayed in this matter. Contrary to the Government's contention, the Court finds that the Supreme Court's decision may affect not only the jury instructions, but the substantive charges against Adcox.[1] If the trial is to be stayed, as the parties agree, the Court finds no harm to the Government in staying a ruling on the Motion to Dismiss. Once the Supreme Court rules, the Court can allow a short time for supplemental briefs, if necessary, and then rule expeditiously on the Motion to Dismiss.

However, the Court finds that a stay should not be granted as to the pending Motion to Suppress. The issues raised in that motion have nothing to do with the question before the Supreme Court. Further, while the Court understands Adcox's concerns about the unnecessary expenditure of his resources, the Government has raised a valid point about the effect of a delay when witnesses are testifying about dated events. If an evidentiary hearing on the Motion to Suppress is necessary, the Court finds that it should held as soon as possible, rather than delaying several months until after the *Salman* decision.

Finally, it is unclear what discovery needs to be conducted at this time. To the extent that further discovery is necessary to prevent the destruction of evidence, to address the pending Motion to Suppress, or for other time-sensitive reasons, the Motion to Stay will also be denied.

---

[1] The Court does not predict what the Supreme Court will do in this case, only that the decision may affect more than jury instructions.

**CONCLUSION**

For the foregoing reasons, Adcox's Motion to Stay [Doc. No. 37] is GRANTED IN PART and DENIED IN PART. To the extent that Adcox moves to stay the trial in this matter and to stay a ruling on the pending Motion to Dismiss, the Motion to Stay is GRANTED. Trial, which is currently set for May 17, 2016, is CONTINUED, to be RE-SET, if necessary, following the Supreme Court's decision in *Salman*. To the extent that Adcox moves to stay a ruling on the pending Motion to Suppress and to stay discovery necessary to prevent the destruction of evidence, to address the pending Motion to Suppress, or for other time-sensitive reasons, the Motion to Stay is DENIED.

MONROE, LOUISIANA, this 16th day of February, 2016.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE